IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| JOSE ENRIQUEZ RAMIREZ, ISIDRO ENRIQUEZ RAMIREZ, JIOVANNI MENDEZ LANCON, JAVIER JIMENEZ VERA, FRANCISCO RUIZ FIGUEROA, ALEJANDRO RUIZ ROSAS, ANTONIO ARROYO JURADO, FERMIN JIMENEZ ROSAS, GUSTAVO MORENO ORTIZ, GUSTAVO VERA RAMIREZ, J. SANTOS SOTO VAZQUEZ, JACOBO MARTINEZ GALLARDO, JAVIER JIMENEZ RAMIREZ, JONATHAN VICENTE BACA JURADO, JOSE MANUEL LANCON JURADO, JOSE MARTINEZ JURADO, AND SALVADOR CHAVEZ JURADO, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Civil Action No. 12 CV 210 |
| GLK FOODS, LLC and RYAN A. DOWNS, | ) ) ) | Judge Griesbach |
| *Defendants*. | ) ) | |

## SECOND AMENDED CLASS ACTION COMPLAINT

1. This is a class action by migrant workers who were recruited by Defendants in Mexico and obtained H-2B temporary visas in order to work for Defendants in the United States. The named Plaintiffs allege that Defendants GLK Foods, LLC ("GLK"), and Ryan A. Downs violated their rights and the rights of other similarly situated migrant workers under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-1871 ("AWPA"). Plaintiffs also allege that Defendant GLK's conduct constituted a breach of contract under

Wisconsin common law and, in the alternative, that Defendant GLK's promises to Plaintiffs must be enforced pursuant to the doctrine of promissory estoppel under Wisconsin common law.

2. The named Plaintiffs, on behalf of themselves and others similarly situated ("Class Members"), seek recovery of unpaid wages and damages to make them whole for Defendants' violations of law. Plaintiffs further seek the costs of litigation and attorneys' fees under the common fund doctrine.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331, this case arising under the laws of the United States; 28 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce; and 29 U.S.C. § 1854(a), this case arising under the AWPA. The Court has supplemental jurisdiction over Plaintiffs' Wisconsin common law breach of contract and promissory estoppel claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the acts or omissions that have given rise to Plaintiffs' claims occurred within this District, and because Defendants reside in this District.

## PARTIES

5. Plaintiffs and Class Members are citizens of Mexico. In 2011, Plaintiffs and Class Members received visas to work for Defendants under the H-2B temporary foreign worker visa program administered by the U.S. Department of Labor pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b). Workers who receive H-2B visas are commonly known as "H-2B workers."

6. Defendant GLK is a Wisconsin limited liability company that conducts business in this District, producing goods for sale in interstate commerce. Specifically, GLK operates a

sauerkraut cannery in Bear Creek, Wisconsin, in which raw cabbage is cut, chopped, and prepared to make sauerkraut.

7. GLK considers itself to be the largest sauerkraut producer in the world and the maker of America's top brands of sauerkraut.

8. Defendant Ryan A. Downs is a resident of Wisconsin and the owner and President of GLK. Downs conducts significant business in this district. At all times relevant to this action, Downs has been engaged, through his ownership and operation of GLK, in the production of goods for sale in interstate commerce.

9. On information and belief, at all times relevant to this action, Downs exercised authority and control over the conditions of employment at GLK.

## STATEMENT OF FACTS

10. In order to be authorized to employ temporary foreign workers under the H-2B program, an employer in the United States must apply for and receive certification from the Department of Labor that (1) there are insufficient workers available in the United States to perform the work to be offered to H-2B workers, and (2) the employment of H-2B workers will not adversely affect the wages and working conditions of similarly employed U.S. workers. 8 U.S.C. § 1101(a)(15)(H)(ii)(b); 8 C.F.R. § 214.2(h)(6)(iv)(A).

11. Employers seeking the admission of H-2B workers must first file an Application for Temporary Employment Certification with the Department of Labor. 20 C.F.R. § 655.20. In these applications for H-2B certification, employers specify the period of employment and the wages and other terms and conditions of employment, including minimum terms and conditions required to be offered by employers pursuant to 20 C.F.R. § 655, Subpart A.

12. In 2011, Defendants applied for and obtained Department of Labor certification authorizing them to employ one hundred and forty-three (143) H-2B workers as trim line laborers in Defendants' sauerkraut cannery in Bear Creek, Wisconsin from August 1, 2011 through November 15, 2011. Defendants' H-2B application and certification for the 2011 season is attached as Exhibit A.

13. In Defendants' 2011 H-2B application and certification, an agent of GLK affirmed, under penalty of perjury, that GLK would:

   a. Pay the offered wage that "equals or exceeds the highest of the prevailing wage, the applicable Federal, State, or local minimum wage, and…pay the offered wage during the entire period of the approved labor certification." Ex. A at A-10.

   b. Provide at least forty (40) hours per week of work for each worker. *Id.* at A-6.

   c. Provide work for the certified period of employment. *Id.* at A-4.

   d. Comply with all federal, state, and local employment-related laws and regulations. *Id.* at A-10.

   e. Provide or pay for return transportation from the job site to the workers' homes if workers are terminated prior to the end of the certified period of employment. *Id.* at A-11.

   f. Provide terms and conditions of employment that are not less than the minimum terms and conditions required under 20 C.F.R. § 655, Subpart A. *Id.* at A-10.

14. Defendants' H-2B application and certification required that the 2011 H-2B workers be paid a regular hourly wage of $10.36.

15. When Plaintiffs and Class Members were hired by Defendants, the terms in Exhibit A became contractual terms of employment as a matter of law.

16. Defendants recruited Plaintiffs and Class Members in Mexico in 2011 to come to Wisconsin as H-2B workers to work at Defendants' sauerkraut cannery in Bear Creek for the period of employment contained in the H-2B certification. Ex. A at A-4.

17. At the time of recruitment, Defendants offered Plaintiffs and Class Members H-2B employment, promising to sponsor their visas for such employment, to transport them to the work-site in Bear Creek, Wisconsin, and to provide them work for the certified period of employment.

18. Plaintiffs and Class Members accepted Defendants' job offer and began employment by leaving their hometowns, traveling to the U.S. Consulate in Matamoros, Mexico at Defendants' request, for immigration processing and to obtain their visas.

19. Plaintiffs and Class Members were obligated to remain in Matamoros for approximately a week, waiting for visas and further instructions from Defendants, during which time they incurred significant expenses for lodging and subsistence.

20. In reliance on Defendants' offer, Plaintiffs and Class Members incurred travel, immigration, and other expenses to be authorized and prepared to enter the United States as H-2B workers for GLK and thereafter to travel to Wisconsin. But for this offer, Plaintiffs and Class Members would not have applied for visas, and would not have incurred the related expenses.

21. In addition, and again in reliance on Defendants' offer of employment, Plaintiffs and Class Members also left existing jobs, turned down other job offers and/or refrained from seeking alternative employment which they would not have done but for Defendants' offer of employment.

22. Each Plaintiff was issued an H-2B visa to work for GLK in Wisconsin until the end of the certified period of employment, November 15, 2011. This period of employment was

represented to the U.S. government as a term of the job offer in order to obtain authorization to employ the workers. Ex. A at A-4.

23. GLK informed Plaintiffs and Class Members that they were to leave Matamoros, Mexico for Bear Creek, Wisconsin on approximately Friday, September 2, 2011, at 4:00 p.m. Plaintiffs and Class Members presented themselves for transportation to Wisconsin, ready and willing to work pursuant to their H-2B visas. Shortly before the scheduled departure time, however, Plaintiffs and Class Members were told by GLK that Defendants would no longer need Plaintiffs' and Class Members' labor, and that the H-2B visas issued to them would be cancelled.

24. Plaintiffs and Class Members each bore the entire cost of their return trips home.

25. Plaintiffs' and Class Members' expenses incurred at the direction of Defendants and in reliance on their employment with Defendants included but were not limited to: the costs of Mexican passports; travel expenses from their homes to Matamoros; photography, fingerprinting, and other expenses necessary for their visa applications; lodging and subsistence expenses near the U.S. Consulate in Matamoros pending approval of their visa applications and before transportation to Wisconsin was arranged; and return expenses from Matamoros to their homes after Defendants cancelled their visas.

26. Defendants never reimbursed Plaintiffs and Class Members for any of the above-described expenses that they incurred.

## CLASS ACTION ALLEGATIONS

27. Plaintiffs bring the claims set forth in Counts I, II, and III on behalf of themselves and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

28. Plaintiffs seek to represent a class consisting of all those individuals who, in 2011, applied for and received H-2B temporary foreign worker visas to work in Wisconsin for Defendants, but whose visas were cancelled by Defendants before they could travel to Wisconsin.

29. The Class Members are so numerous and geographically dispersed as to make joinder impractical. The precise number of individuals in the Class is known only to the Defendants. However, the Class is believed to include over thirty-five (35) individuals. The Class is comprised of indigent migrant workers who reside throughout Mexico. The relatively small size of the individual claims, the geographical dispersion of the Class Members, and the indigency of the Class Members make the maintenance of separate actions by each Class Member economically infeasible.

30. There are questions of fact and law common to the Class. These common questions include but are not limited to:

> Whether contracts were formed when Defendants offered to sponsor Plaintiffs and Class Members for H-2B employment in Bear Creek for the certified period of employment and Plaintiffs and Class Members accepted that offer and began employment by leaving their homes, traveling to the U.S. Consulate in Matamoros at Defendants' request for immigration processing and to obtain their visas;
>
> Whether Defendants breached their contracts of employment with Plaintiffs and Class Members by canceling their visas and contracts;
>
> Whether Defendants' offers of employment to Plaintiffs and Class Members incorporated, as a matter of law, the terms and conditions for employment certified and set forth in Defendants' H-2B application and certification, attached as Exhibit A;
>
> Whether Defendants violated the AWPA by entering into and then breaching a working arrangement with Plaintiffs and Class Members;
>
> Whether Defendants violated the AWPA by failing to provide Plaintiffs and Class Members at least forty (40) hours of work each week;

Whether Defendants violated the AWPA by failing to provide or pay for Plaintiffs' and Class Members' costs of return transportation from Matamoros, Mexico to their homes;

Whether Defendants violated the AWPA by failing to provide Plaintiffs and Class Members a written statement of the terms and conditions of the proffered employment at the time of recruitment;

Whether Defendants' violations of the AWPA were intentional;

Whether, in the alternative to breach of contract, Defendants made promises of employment to Plaintiffs and Class Members that are enforceable in promissory estoppel.

31. The claims of the representative Plaintiffs are typical of the Class, and these typical, common claims predominate over any questions affecting only individual Class Members. The representative Plaintiffs have the same interests as other Class Members and will vigorously prosecute these interests on behalf of the class.

32. Plaintiffs' attorneys are experienced in representing plaintiffs in labor and employment class actions and have handled numerous class actions in the federal courts. They are prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the Class Members.

33. A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia:*

   a. The common issues of law and fact, as well as the relatively small size of the individual Class Members' claims, substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions;

   b. Many Class Members are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

   c. There has been no litigation already commenced against Defendants by the members of the class to determine the questions presented;

d. A class action will allow the Court to adjudicate the claims of all Class Members at once and enter an appropriate order regarding monetary relief with respect to the Class as a whole;

e. A class action can be managed without undue difficulty since Defendants are required to maintain detailed records concerning each member of the class; and

f. A class action will avoid the heavy burden of multiple, duplicative lawsuits.

34. Pursuant to Rule 23(c)(2)(B), Plaintiffs request that notice be sent to Class Members of all claims in Counts I, II, and III.

## COUNT I
### Migrant and Seasonal Agricultural Worker Protection Act
### (Defendants GLK and Downs)

35. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 34 above.

36. In 2011, Defendants recruited Plaintiffs and Class Members in Mexico to travel to the United States to work as H-2B workers for Defendants.

37. At the time Plaintiffs and Class Members were recruited, they were not provided with a written statement of the terms and conditions of the proffered employment, in English and in Spanish, in violation of the AWPA, 29 U.S.C. § 1821(a) and (g), and its attendant regulations, 29 C.F.R. §§ 500.75(b), 500.78.

38. At the time of their recruitment, Plaintiffs and Class Members were promised that if they obtained H-2B visas they would be employed by Defendants in Wisconsin for the 2011 season.

39. The promises Defendants made to Plaintiffs and Class Members at the time of recruitment constitute terms of the working arrangement between Defendants and Plaintiffs and

Class Members pursuant to the AWPA, 29 U.S.C. § 1822(c), and its attendant regulations, 29 C.F.R. § 500.72 (the "AWPA working arrangement").

40. Defendants intentionally failed to comply with the promises they made to Plaintiffs and Class Members at the time of their recruitment.

41. The terms and conditions of employment set forth in Defendants' application for H-2B certification described above in paragraphs 12-14 constitute terms of the AWPA working arrangement.

42. Under the terms and conditions of Defendants' H-2B application and certification, as incorporated into the AWPA working arrangement, Defendants were required to pay Plaintiffs and Class Members a wage equal to or greater than the prevailing wage of $10.36 an hour for at least forty (40) hours per week of work for the certified period of employment.

43. Under the terms and conditions of Defendants' H-2B application and certification, as incorporated into the AWPA working arrangement, Defendants were required to provide or pay for Plaintiffs' and Class Members' transportation to their homes after Defendants informed them that their services were no longer necessary.

44. Defendants violated the terms of the AWPA working arrangement, as described above, by failing to provide Plaintiffs and Class Members with employment as set forth in the working arrangement, and by failing to provide or pay for Plaintiffs' and Class Members' return transportation after refusing to employ them.

45. As a consequence of Defendants' intentional AWPA violations, Plaintiffs and Class Members are entitled to recover (a) their unpaid wages for the 2011 season; (b) full restitution of the amounts they paid and expenses they were required to incur upon accepting

GLK's offer of employment; (c) full restitution of the amounts they paid to return to their homes; and (d) statutory damages of up to $500 per individual per violation under 29 U.S.C. § 1854(c).

## COUNT II
## Breach of Contract
## (Defendant GLK Only)

46. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 34 above.

47. When Plaintiffs and Class Members accepted employment with GLK, the terms of Defendants' H-2B application and certification became contractual terms of employment between GLK and Plaintiffs and Class Members as a matter of law. Defendants' promises to Plaintiffs and Class Members at the time of their recruitment, and Plaintiffs' and Class Members' acceptance of Defendants' offers of employment based upon such promises, formed employment contracts between GLK and Plaintiffs and Class Members.

48. In exchange for Defendants' promises of employment, Plaintiffs and Class Members promised to be prepared, ready, and able to perform the work required of them, including by traveling to Matamoros, Mexico, where they were instructed to assemble to apply for H-2B visas and as part of their relocation to the United States, and by receiving visas.

49. Plaintiffs and Class Members fulfilled their promises and met their obligations under the employment contracts and, in doing so, spent considerable sums and incurred substantial expenses.

50. GLK breached Plaintiffs' and Class Members' employment contracts in the following ways:

    a. GLK failed to provide employment that complied with all applicable federal and state employment-related laws and regulations;

    b. GLK failed to provide forty (40) hours of work each week;

    c. GLK failed to provide work for the certified period of employment; and

    d. GLK failed to provide or pay for return transportation to the Plaintiffs' and Class Members' homes.

51. GLK's breaches of Plaintiffs' and Class Members' employment contracts caused Plaintiffs and Class Members substantial injuries, for which Plaintiffs and Class Members are entitled to actual and consequential damages.

52. Plaintiffs and Class Members relied substantially and detrimentally upon GLK to honor its employment commitments and, as a result of GLK's failure to do so, Plaintiffs and Class Members are entitled to full restitution of the amounts they paid and expenses they were required to incur upon accepting GLK's offer of employment.

## COUNT III
## Promissory Estoppel
## (Defendant GLK Only)

53. In the alternative to Count II, Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 34 above.

54. At the time of their recruitment, GLK promised Plaintiffs and Class Members employment in Wisconsin for the certified period of employment if they received visas.

55. In reliance on GLK's promises, Plaintiffs and Class Members expended considerable sums and incurred substantial expenses to be issued H-2B visas and meet other conditions that GLK required of them to begin employment and to prepare themselves to relocate to the place of employment. Plaintiffs and Class Members would not have incurred these costs but for Defendants' promises of employment.

Page **12** of **15**

Case 1:12-cv-00210-WCG    Filed 11/14/13    Page 12 of 15    Document 40

56. In addition, and again in reliance on GLK's promises, Plaintiffs and Class Members left existing jobs, turned down other job offers and/or refrained from seeking alternative employment.

57. The actions taken by Plaintiffs and Class Members in reliance on GLK's promise of employment were of a definite and substantial character. Plaintiffs' and Class Members' actions taken in reliance on GLK's employment promises were reasonable and should have been expected and were foreseeable by GLK.

58. Injustice can only be avoided through enforcement of GLK's promises.

59. As a consequence of GLK's failure to fulfill its promises, Plaintiffs are entitled to recover (a) their unpaid wages for the 2011 season; (b) full restitution of the amounts they paid and expenses they incurred in reliance on GLK's promise of employment; and (c) full restitution of the amounts they paid to return to their homes.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court grant them and Class Members the following relief:

A. Certify this case as a class action in accordance with Fed. R. Civ. P. 23(b)(3) with respect to the claims set forth in Counts I, II, and III;

B. Declare that Defendants intentionally violated the AWPA and its attendant regulations as set forth in Count I;

C. Grant judgment in favor of Plaintiffs and Class Members and against Defendants, jointly and severally, on Plaintiffs' and Class Members' claims under the AWPA as set forth in Count I;

D. Award each of the Plaintiffs and Class Members actual and statutory damages for violations of the AWPA as set forth in Count I;

E. Grant judgment in favor of Plaintiffs and Class Members and against Defendant GLK on the breach of contract claims set forth in Count II;

F. Award Plaintiffs and Class Members actual and consequential damages for breach of contract as set forth in Count II;

G. Grant judgment in favor of Plaintiffs and Class Members and against Defendant GLK on the promissory estoppel claims set forth in Count III;

H. Award Plaintiffs and Class Members actual and consequential damages under the doctrine of promissory estoppel as set forth in Count III;

I. Award Plaintiffs the costs of this action;

J. Award Plaintiffs reasonable costs and attorneys' fees with respect to the breach of contract claims, or, in the alternative, the promissory estoppel claims, pursuant to the common-fund doctrine;

K. Grant such further relief as is just and equitable.

Dated:   October 21, 2013

Respectfully submitted,


s/ Joshua Karsh
One of Plaintiffs' Attorneys

| | |
|---|---|
| Matthew J. Piers/2206161 | Weeun Wang/33862 |
| Joshua Karsh/6203096 | Nicholas Marritz/283540 |
| José J. Behar/6203727 | Attorneys for Plaintiffs |
| Jenna Miara/6288306 | Farmworker Justice |
| Christopher J. Wilmes/6287688 | 1126 16th Street, N.W., Suite 270 |
| Claudia M. Flores/4184867 | Washington, D.C. 20036 |

Attorneys for Plaintiffs  
Hughes Socol Piers Resnick & Dym, Ltd.  
70 W. Madison Street, Suite 4000  
Chicago, IL 60602  
Telephone: (312) 580-0100  
Fax: (312) 580-1994  
E-mail: mpiers@hsplegal.com  
       jkarsh@hsplegal.com  
       jbehar@hsplegal.com  
       cwilmes@hsplegal.com  
       cflores@hsplegal.com  
       jmiara@hsplegal.com  

(202) 293-5420 ext. 308  
Email: wwang@farmworkerjustice.org  
       nmarritz@farmworkerjustice.org