**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | | |
|---|---|---|
| JOSE ENRIQUEZ RAMIREZ et al, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| | ) | Case No. 1:12-cv-00210-WCG |
| | ) | |
| v. | ) | |
| | ) | |
| GLK FOODS, LLC and RYAN A. DOWNS, | ) | |
| | ) | |
| Defendants. | ) | |

**CORRECTED PLAINTIFFS' MEMORANDUM IN SUPPORT OF CERTIFYING GLK'S
LIABILITY UNDER COUNTS I AND II FOR CLASS-WIDE ADJUDICATION**

This is an action by Mexican nationals, seeking to represent more than 35 similarly-situated individuals whom Defendants recruited and hired to work as "trim line laborers," processing cabbage into sauerkraut, in 2011, at their cannery in Bear Creek, Wisconsin. Defendants recruited and hired these workers under the federal H-2B temporary "guestworker" visa program. 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

The claims these workers bring are analogous to the very similar claims brought by the workers in *Jimenez et al. v. GLK and Ryan A. Downs*, No. 12-C-00209. But the injuries suffered by these workers are more severe because, unlike the workers in *Jimenez*, these workers not only were not reimbursed for their visa, travel and related expenses, they also received no wages. All they got was *debt.*

Having received and accepted offers of employment from GLK in their home towns, contingent only on their being issued visas, these workers traveled, at their own expense, from their home towns to the U.S. consulate in the Mexican border city of Matamoros, for many of

1

them a journey of more than 12 hours and 600 miles. Once in Matamoros, they bore their own travel and lodging expenses, for a week, waiting for GLK to send a bus to take them to Wisconsin. Then, only hours before they were scheduled to depart Mexico to travel to Wisconsin, GLK informed this group of workers that it would not need their services. The workers thus had to return to their home towns—again at their own expense—after having spent significant sums on travel and visa expenses, and without receiving a single day's wages from GLK. Defendants never reimbursed the workers for their travel or visa expenses, and never compensated them for work offered and accepted. As a result, the majority of Plaintiffs and the workers traveling with them ended up unemployed, having left their jobs to work for GLK, and/or saddled with significant debts, having borrowed funds to cover the travel expenses to work for GLK.

H-2B employment is highly regulated. As a condition of receiving authorization to "import" guestworkers, GLK complied with an administrative certification process that included filing an Application for Temporary Employment Certification with the U.S. Department of Labor ("DOL"). *See* 20 C.F.R. § 655.22 (2009). As part of that application process, one of the required terms that GLK agreed to, as a condition of obtaining authorization to employ temporary foreign workers, was a promise to employ H-2B workers for a defined rather than indefinite term. In its 2011 application, GLK's certified specific intended start and end dates for employment for H-2B workers. *See* App. Exh. A (Application for Temporary Employment Certification for 2011).

Like the federal Government, the State of Wisconsin also requires employers to hire migrant workers for a definite term, rather than at-will. Wisconsin also requires that that period of employment must be memorialized by the employer in written disclosures, which must

2

contain a "minimum work guarantee," and must be provided to workers both at the time of recruitment and at the time hiring. W.S.A. § 103.915(1)(b)(4); Wis. Admin. Code § DWD 301.06(8).

The rationale for eliminating at-will employment for H-2B workers under both state and federal law is clear: H-2B workers often leave families and other jobs, travel many hundreds of miles, and incur substantial out-of-pocket visa and travel expenses to accept H-2B employment. Both Congress and the state of Wisconsin have endeavored to protect these workers against exactly the risk, which the workers cannot otherwise effectively mitigate or insure against, that materialized for the workers in this case: they were victimized by a bait-and-switch, whereby GLK belatedly told them, only after that they had accepted employment, left jobs behind and incurred substantial expenses, that it had decided it did not need their services. GLK certified that employment for H-2B workers in Bear Creek in 2011 could be expected to last 15 weeks and 2 days, beginning on August 1st and ending on November 15th, and also that during that period of time, GLK would provide the workers with at least 40 hours of work per week. *Id.*

The workers in this case are poor, unsophisticated, non-English-speaking migrant workers. Defendant GLK Foods, LLC ("GLK") is the world's largest sauerkraut producer, with annual revenues of more than $25 million; Defendant Ryan A. Downs is the owner and president of GLK.

In Count I of their complaint in this case, Plaintiffs claim that by stranding them in Matamoros, after they had received and accepted offers of employment contingent only on their being issued visas, and after they had in fact been issued those visas, Defendants violated their rights under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-1871 ("AWPA"), which prohibits employers from breaching the "working arrangement" they

3

have made with H-2B workers. 29 U.S.C. § 1822(c). Plaintiffs allege that Defendants violated the working arrangement in two ways: (1) by failing to provide them the work for the period that Defendants certified in their Application for Temporary Employment Certification; and (2) by failing to pay the workers for their costs of return transportation from Matamoros to their homes, in violation of 20 C.F.R. § 655.22(m). Plaintiffs also allege in Count I that Defendants violated additional provisions of the AWPA by not providing them with written disclosures of terms and conditions of employment at the time of recruitment, as required by 29 U.S.C. § 1821(a).

In Count II of their Complaint, Plaintiffs allege that by not employing them and other workers it stranded in Matamoros for the certified period of employment, GLK committed a common-law breach of contract.

Plaintiffs seek to certify these claims in Counts I and II for class-wide adjudication, with the class to be defined as:

> All those individuals of who were recruited and hired by Defendants, received H-2B temporary work visas in August and September 2011 to work for the Defendants, and who were then dismissed, after being issued a visa but before traveling to Bear Creek, Wisconsin.

Plaintiffs only seek to certify the *liability* component of these claims under Rule 23, not damages, which, if liability is established, will be reserved for separate, subsequent proceedings. This conforms with the Seventh Circuit's recommendation that this form of "divided" or "hybrid" certification, where liability is determined "on a class-wide basis, with separate hearings [later] to determine—if liability is established—the damages of individual class members," is "often … the sensible way to proceed." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013). *Accord, Phillips v. Asset*

Case 1:12-cv-00210-WCG   Filed 01/08/14   Page 4 of 21   Document 45

*Acceptance, LLC,* __ F.3d ___ (7th Cir. Dec. 2, 2013); *McReynolds v. Merrill Lynch*, 672 F.3d 482, 491 (7th Cir. 2012).

As discussed below, the claims in Counts I and II each meet the conditions for class certification under Fed. R. Civ. P. 23(b)(2). They could also be certified for class-wide adjudication of liability issues under Rule 23(c)(4), which authorizes the formation and certification of "issue" classes (as discussed in this memorandum). Alternatively, certification could also appropriately be entered under Rule 23(b)(3). In addition to class certification, Plaintiffs request the designation of Plaintiff Jiovanni Mendez Lancon as class representative, and the appointment of class counsel, pursuant to Rule 23(g).

## ARGUMENT

The Supreme Court has held that class-certification under Rule 23 is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been satisfied," but that when those prerequisites have been satisfied, the certification of a class is mandatory, stating that Rule 23 "creates a categorical rule," affirmatively "entitling" any "plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 398 (2010). *See also Subedi v. Merchant,* 2010 WL 1978693 * 2 (N.D. Ill. May 17, 2010) ("satisfaction of [Rule 23(a)'s] requirements… *categorically entitles* a plaintiff to pursue her claim as a class action") (emphasis added).

## I.     The Claims In Counts I And II Qualify For Class Certification Under Rule 23(a).

As a threshold to class certification, a claim must satisfy each of the four class-qualifying criteria of Rule 23(a): namely, numerosity, commonality, typicality and adequacy. If those

5

criteria are met, then, in addition, the claim also must fit one of the three prongs of Rule 23(b). Alternatively, discrete issues or portions of claims may be certified under Rule 23(c)(4) (for example, a court may grant class treatment on liability issues, while reserving damages issues for individual determination). *Phillips v. Asset Acceptance, LLC*, __ F.3d ___ (7th Cir. Dec. 2, 2013); *Butler v. Sears Roebuck*, 727 F.3d 796, 800 (7th Cir. 2013) ("Rule 23(c)(4) … will often be the sensible way to proceed"); *McReynolds v. Merrill Lynch,* 672 F.3d 482, 491 (7th Cir. 2012).

As discussed below, the claims in Counts I and II satisfy all four criteria of Rule 23(a), as well as the additional conditions required for certification under Rule 23(b)(2), Rule 23(b)(3) or Rule 23(c)(4).

### A.     Numerosity

Rule 23(a)(1) requires "numerosity," although without "identify[ing] a magic threshold number required to establish numerosity." *Schmidt v. Bassett Furniture Indust*., 2011 WL 67255 (E.D. Wis. Jan. 10, 2011). The exact size of the class here is not known. Plaintiffs estimate that the putative class is comprised of more than thirty-five individuals. Courts have found numerosity satisfied in cases with comparable numbers of class members, *see Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (in certifying a class of twenty-nine plaintiffs, finding "when the class is small, factors other than number are significant."), particularly in cases where, as here, "the geographic diversity of the class members, the nature of the action, [or] the size of each plaintiff's claim" compared to the cost of litigation present obstacles, *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004), and also given the reality that "[e]xcept for the class approach[,] many might never receive any redress for the wrong done them." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir.1981).

6

The indigent migrant workers in this case live in small, rural communities in central Mexico, lack knowledge of the U.S. legal system, have little formal education, speak little to no English, and have relatively modest individual damages claims compared to the cost of individual litigation, all of which are factors that have supported class certification in other migrant worker cases.[1]

## A.    Commonality

Rule 23(a)(2) requires "commonality," which means the existence of a common question or "questions of law or fact common to the class," based on common contentions and likely to produce common answers. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550–51 (2011). This commonality is generally manifest when claims arise from standardized conduct, similarly affecting all class members.

> ### 1.    The Claim in Counts I For Defendants' Breach Of The AWPA Working Arrangement, By Not Employing H-2B Workers For The Certified Period Of Employment, Presents Common Questions Suitable For Class-Wide Adjudication Under Rule 23(a).

Count I of Plaintiffs' Second Amended Complaint alleges, among others, a statutory claim under the AWPA, for breach of the "working arrangement."[2]

---

[1] Numerous federal courts have recognized factors such as those present in this case — that the putative class members are unsophisticated and impoverished migrant workers who do not speak English, and face difficult logistical and socioeconomic circumstances — that make their joinder impractical, and maintenance of individual suits nigh impossible. *See Covarrubias v. Capt. Charlie's Seafood, Inc.*, 2011 WL 2690531, *4 (E.D.N.C. 2011); *Gaxiola v. Williams Seafood of Arapahoe, Inc.,* 776 F. Supp. 2d 117, 130 (E.D.N.C. 2011); *Moreno-Espinosa v. J & J Ag Prods.*, 247 F.R.D. 686, 688 (S.D. Fla. 2007); *Salas-Mateo v. Ochoa*, 2004 U.S. Dist. LEXIS 16454, 2004 WL 1824124 at *2 (S.D. Fla. 2004); *Leyva v. Buley*, 125 F.R.D. 512, 515 (E.D. Wash. 1989).

[2] Under the AWPA, "[n]o farm labor contractor, agricultural employer, or agricultural association shall, without justification, violate the terms of any working arrangement made by that contractor, employer, or association with any migrant agricultural worker." 29 U.S.C. §1822(c); 29 C.F.R. § 500.72. *See also* W.S.A. § 103.915(1)(b),(4)(8) (requiring a "written work agreement"). The AWPA "working arrangement" is a statutory contract, De *Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1317 (N.D. Ga. 2008), in which a a defined period of employment is a required element, *see Reyes*

This "working arrangement" claim alleges that GLK had a binding working arrangement under the AWPA with every one of the workers it stranded in Matamoros in 2011; that that working arrangement guaranteed their employment for the certified period of employment specified by GLK in its Application for Temporary Employment Certification; and that as a result, GLK owes every one of the H-2B workers it stranded in Matamoros in 2011 wages for the certified period of employment. This claim has seven elements:

**(1)** Whether defendants were "agricultural employers," 29 U.S.C. § 1802(2); 29 C.F.R. § 500.20(d);

**(2)** Whether class members were "migrant agricultural workers," 29 U.S.C. §§ 1821-23; 29 C.F.R. § 500.20(p);

**(3)** Whether employment for a definite term is a required element of a AWPA "working arrangement," *see Reyes v. Remington Hybrid Seed Co., Inc.*, 495 F.3d 403, 406 n. * (7th Cir. 2007); *Colon v. Casco, Inc*, 716 F. Supp. 688, 694 (D. Mass. 1989):

**(4)** Whether the period of employment required by the AWPA working arrangement between Defendants and the workers it stranded in Matamoros in 2011 was, as a matter of law, the certified period of employment, 20 C.F.R. § 655.18)(b)(13), specified by Defendants in their Application for Temporary Employment Certification, *see De Leon-Granados v. Eller & Sons Trees, Inc.,* 581 F. Supp. 2d 1295, 1324 (N.D. Ga. 2008); *Bernett v. Hepburn Orchards, Inc.*, 1987 WL 16939, 7 (D. Md. 1987); *Clarke v. Gardenhour Orchards, Inc*., 1987 WL 48234, 4 (D. Md. 1987);

**(5)** Whether class members were employed for less than the certified period of employment;

**(6)** Whether GLK had legal "justification," 29 U.S.C. § 1822(c); 29 C.F.R. § 500.60, to terminate class members' employment before the end of the certified period of employment; and

**(7)** The measure of class members' lost earnings resulting from employment for less than the full certified period of employment.

---

*v. Remington Hybrid Seed Co., Inc.*, 495 F.3d 403, 406 (7th Cir. 2007); *Colon v. Casco, Inc*, 716 F. Supp. 688, 694 (D. Mass. 1989), along with a guarantee of compliance with federal statutes and regulations. *See Donaldson v. U.S. Dep't of Labor*, 930 F.2d 339, 350 (4th Cir.1991); *Fulford v. Alligator River Farms, LLC*, 58 F. Supp. 2d 550, 556 -557 (E.D.N.C. 2012).

Plaintiffs do not seek to adjudicate the seventh of these elements (damages) on a class-wide basis. While all class members suffered a wage loss as the result of their employment for less than the certified period, *see* App. Exh. B (sampling of *Ramirez* Plaintiffs' Responses to Defendants' First Set of Interrogatories, Nos. 5, 6, 10, 12, 14, 15), their resulting wage losses differ, due to their different experiences in locating substitute employment, which may require individualized determinations.

By contrast, the first six elements of the claim satisfy all the conditions required for class-wide adjudication, affirmatively entitling plaintiffs "to pursue [their] claim as a class action." *Shady Grove,* 559 U.S. at 398. None of these elements requires individualized proofs. With respect to each of these elements, every member of the class will succeed or fail together, not individually.

### a. The First and Second Elements Of The Working Arrangement Claim In Count I Present Common Questions.

The first two elements of plaintiffs' claim for enforcement of the AWPA working arrangement involve AWPA *coverage*: namely, whether Defendants were "agricultural employers" and class members were "migrant agricultural workers."

As to both elements, the answer will be the same for every member of the proposed class, because the nature of the employment relationship between GLK and every member of the proposed class was the same. If Defendants were AWPA-covered "agricultural employers" for any class member, then they were "agricultural employers" for all. And to the same extent, all class members were uniformly AWPA-covered "migrant agricultural workers." The question of AWPA coverage will be uniform and resolvable "in one stroke" for all members of these proposed classes. *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

9

### b. The Third And Fourth Elements Of The Working arrangement Claim In Count I Present Common Questions.

The third and fourth elements of Plaintiffs' claim to enforce the AWPA working arrangement they had with GLK are whether, as a matter of law, the period of employment is a required term in every AWPA "working arrangement" and whether the period of employment certified by the employer in its H-2B application becomes the binding period of employment for purposes of the AWPA working arrangement. Once again, these are common questions to which the answers will be the same for every member of the proposed class. Every member of the proposed class shares a common contention and claim: that as a matter of law, GLK's certified period of employment constituted an enforceable term of their AWPA working arrangement with GLK.[3]

### c. The Fifth and Sixth Elements Of The Working Arrangement Claim In Count III Present Common Questions.

The fifth element of the wage claim in Count I (that every member of the class was not employed for the certified period of employment) is not disputed.

The sixth element—whether Defendants' had a legally cognizable "justification" for violating the terms of its AWPA working arrangement by not employing class members for the certified period of employment—presents, again, a common question. Defendants claim the same justification with respect to dismissing every class member: an allegedly unforeseeable federally-mandated wage increase for H-2B workers —one that never ultimately took effect.

---

[3] Should the court find that the certified period of employment constitutes an enforceable contractual term of the AWPA working arrangement, interpretation of that term will also be the same for all class members, as it will be purely a matter of law. The question will be whether GLK was obligated to provide employment between the start and end dates listed in the employment certification or, in the alternative, whether GLK was obligated to provide employment no less than 10 days after the start date of employment and no less than 7 days before the end date of employment as required by the "minimum work guarantee" under the WMLA. Wis. Admin. Code DWD § 301.06(8).

This defense will succeed or fail equally with regard to all workers stranded by GLK in Matamoros in 2011. It will not fail against some but succeed against others (or vice versa). It is a common question, resolvable "in one stroke" for all workers. *Dukes*, 131 S. Ct. at 2551.

> **2. The Claim In Count I For GLK's Breach Of The AWPA By Not Paying Workers Stranded In Matamoros For Their Costs Of Return Transportation From Matamoros To Their Homes Presents Common Questions.**

There is, to our knowledge, no factual dispute underlying this claim. After GLK stranded workers who had been issued visas in 2011, the company did not pay any of them for the costs their return travel from Matamoros to their homes. The sole material question for purposes of this claim is a legal one, namely whether GLK had an obligation to pay those costs under 20 C.F.R. § 655.22(m), which provides that:

> Unless the H-2B worker will be sponsored by another subsequent employer, the employer will inform H-2B workers of the requirement that they leave the U.S. at the end of the authorized period of stay provided by DHS or separation from the employer, whichever is earlier, as required in § 655.35 of this part (absent any extension or change of such worker's status or grace period pursuant to DHS regulations), *and that if dismissed by the employer prior to the end of the period, the employer is liable for return transportation*.

(Emphasis added).

> **3. The Claim In Count I For GLK's Breach Of The AWPA By Not Providing Workers With Required Written Disclosures Of Terms And Conditions Of Employment At The Time Of Recruitment Presents Common Questions.**

Count I also alleges GLK's violation of AWPA's disclosure requirements. This claim has five elements, each amenable to class-wide adjudication, namely:

(1)     Whether defendants were "agricultural employers," 29 U.S.C. § 1802(2); 29 C.F.R. § 500.20(d);

(2)     Whether class members were "migrant agricultural workers," 29 U.S.C. §§ 1821-23; 29 C.F.R. § 500.20(p);

(3)     Whether Defendants "recruited" class members, 29 U.S.C. § 1802(a);

11

(4)     Whether GLK made the disclosures that agricultural employers must make to migrant agricultural workers. 29 U.S.C. § 1821 (a & b); and

(5)     Whether Defendants' disclosure violations were "intentional" under 29 U.S.C. § 1854(c)(1).[4]

Resolving this claim will not require individualized proofs. Both the main questions it raises and the answers to those questions are the same for every member of both proposed classes.

The first two elements of this claim involve AWPA *coverage*: namely, whether Defendants were "agricultural employers" and whether class members were "migrant workers." As to both elements, the question and answer will be the same for every class member because the nature of the employment relationship between GLK and every member of this proposed class was the same. If Defendants were AWPA-covered "agricultural employers" for any class member, they were "agricultural employers" for all, and all class members would be, by the same token, AWPA-covered "migrant agricultural workers." The question of AWPA coverage will be uniform and resolvable "in one stroke" for all members of this proposed class. *Dukes*, 131 S. Ct. at 2551.

With regard to the third element of the claim ("recruitment"), in each of the years in question, GLK's own employees recruited the class members for employment. GLK never outsourced recruitment to an independent contractor. And the process by which GLK recruited H-2B workers was in material respects the same in every year. As 81 signed Plaintiffs' interrogatory responses attest (a selection of which are attached to this brief as App. Exh. B), every year, recruitment efforts were overseen by the same GLK employee, Rafael Jimenez

---

[4] Specific intent to violate the law is not required. For purposes of the AWPA, "intentionally" means that a defendant consciously or deliberately engaged in the action that led to the violation, even if the defendant was unaware that it was violating the law. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 238 (7th Cir. 1983) (applying the Farm Labor Contractor Registration Act, the predecessor to the AWPA).

12

Arroyo, sometimes with assistance from one or two additional workers, and centered on recruiting workers from in and around Rafael's hometown of Santiago Capitiro, population 2,618,[5] in the state of Guanajuato in Mexico. *Id.*

With regard to the fourth element of the claim (failures to make written disclosures in Spanish during recruitment), the facts are not only common but stipulated: no H-2B worker recruited for employment by GLK was ever provided any written disclosure document in Spanish, much less one containing all the pieces of information required by 29 U.S.C. § 1821(a)(1-8). *See* App. Exh. C (Stipulation).

With regard to the fifth element of plaintiffs' AWPA disclosure claim ("intent"), once again the proof will not vary from class member to class member: Defendants did not make individualized disclosure decisions with respect to individual class members. The failure to furnish written disclosures in Spanish was a course of conduct affecting all class members, not a series of individualized decisions.

In sum, class members' claims for violation of AWPA's disclosure provisions are materially identical. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (upholding certification of a class of migrant farmworkers challenging recruiting and disclosure practices); *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472 (E.D. La. 2006) (certifying a class to litigate, among other claims, whether "defendants failed to timely furnish plaintiffs with written disclosures pursuant to 29 U.S.C. § 1821(a)").

      **4.**      **The Claim In Count II For GLK's Breach Of Contract, By Not Employing Workers It Stranded in Matamoros For The Certified**

---

[5] Government of Mexico, National Institute of Statistics and Geography, "2010 Population and Household Census," http://www3.inegi.org.mx/sistemas/ResultadosR/CPV/Default.aspx?texto=Santiago%20Capitiro

13

**Period Of Employment, Presents Common Questions Suitable For Class-Wide Adjudication.**

Whereas Count I of Plaintiffs' Second Amended Complaint alleges that by not employing H-2B workers for the certified period of employment GLK violated the AWPA, in Count II plaintiffs allege that the same conduct constituted a common-law breach of contract.

Breach of contract has familiar elements in Wisconsin: the plaintiff must show a valid contract that the defendant breached and damages flowing from that breach. *Northwestern Motor Car, Inc. v. Pope,* 51 Wis.2d 292, 296 (Wis. 1971). Accordingly, class members' claims for breach of contract each have four elements:

(1) Whether workers stranded by GLK in Matamoros in 2011 had had enforceable contracts with GLK for employment for a term;

(2) Whether the contractual period of employment was defined by the certified period of employment specified in GLK's Application for Temporary Employment Certification;

(3) Whether Defendants breached this term of the contract; and

(4) Damages resulting from any breach.

In addition, resolving this claim will also require resolving any affirmative defenses GLK may assert, such as that performance of the contract was impracticable or impossible. Both the elements and the affirmative defenses present common questions for purposes of Rule 23(a)(2).

The first element of the breach of contract claim in Count II presents a common question. GLK's recruiter, Rafael Jimenez Arroyo, has testified that workers received and accepted offers of employment from GLK in their hometowns and that the only contingency that remained after that was issuance of a visa. App. Exh. D (Rafael Jimenez Arroyo Dep. Tr. at 55-57). Accordingly, by GLK's own admission, a contract was formed, contingent only upon issuance of

14

visas. Under the proposed class definition, every class member was stranded in Matamoros after having been issued a visa.

The second element of this contract claim—whether the contractual period of employment was defined by the certified period of employment specified in GLK's Application for Temporary Employment Certification—is also a common question and a pure question of law. It underlies the contract claim of every H-2B worker stranded by GLK in Matamoros in 2011. And the contention that the certified period of employment became, as a matter of law, an enforceable, contractual term of employment will be resolved to exactly the same extent for every H-2B worker. The Court's rulings will not vary on this questions from worker to worker. [6]

The third element of the contract claim in Count II (employment for a period shorter than the certified period of employment) is undisputed. This leaves but the fourth element of a claim for breach of contract: damages. Plaintiffs do not seek to adjudicate contract damages on a class-wide basis.

**B.    Typicality**

While the requirements of numerosity and commonality focus on attributes of the class as a whole, the requirements of "typicality" and "adequacy" in Rules 23(a)(3) and (a)(4) focus, instead, on the attributes of the class representative(s) and class counsel. 1 Newberg on Class Actions § 3:28 (5th ed.).

---

[6] Likewise, any assertion by GLK that it was 'impossible' or 'impracticable' to employ the workers for the entire certified period will also present a common question, resolvable "in one stroke," *Dukes*, 131 S. Ct. at 2551. Defendants have testified to crop failure in 2010, which either was a sufficient or insufficient ground for terminating all H-2B workers employed by GLK during that season—but in either event, a common question, with the same application to every class member's claim; and likewise, the ultimately suspended and postponed federally-mandated wage increase for H-2B workers in 2011 either was a sufficient or insufficient ground for terminating all H-2B workers employed by GLK during that season—but in either event, a common question, with the same application to every class member's claim.

"Typicality," required by Rule 23(a)(3), gauges whether the class representative's claims are so interrelated with absent class members' claims that by "pursuing her own interests," a class representative "will pursue the class's as well." *Id.* In the Seventh Circuit, this requirement is met when a class representative's (or representatives') claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Here, all class members share common claims in Counts I and II, arising from the same alleged course of conduct: (1) GLK's uniform failure to pay workers it stranded in Matamoros in 2011 for the certified period of employment in 2011; (2) GLK's uniform failure to reimburse any H-2B workers for their post-termination travel expenses from Matamoros to their home towns; and (3) GLK's uniform failure to provide class members with written disclosures in Spanish at the time of recruitment.

All class members also base their claims on the same legal theories: (1) the period of employment specified in GLK's certification is an enforceable term of the AWPA "working arrangement" under Count I and/or a binding contractual term of employment under Count II; (2) GLK had an obligation under the H-2B regulations to reimburse the workers for their post-termination expenses from Matamoros to their hometowns, also enforceable as an AWPA "working arrangement"; and (3) GLK had a legal duty to provide workers with certain written disclosures under the AWPA at the time of recruitment.

A class action is the efficient procedure for litigating these claims.

**C.    Adequacy**

The requirement of "adequacy" in Rule 23(a)(4) "raises concerns about the competency of class counsel and [potential] conflicts of interest" between the class representative and absent class members. *Dukes*, 131 S. Ct. at 2551 n.5; *cf. Phillips v. Asset Acceptance, LLC*, __ F.3d ___ (7th Cir. Dec. 2, 2013) (noting that the test for adequacy of a class representative is not stringent and courts should not "be unrealistic about the role of the class representative in a class action suit. The role is nominal.")

In this case, adequacy should not be an issue. Plaintiffs' counsel are experienced and accomplished in class action litigation, as evidenced by the declaration submitted as Exhibit E in Plaintiffs' Appendix (Declaration of Joshua Karsh, Weeun Wang, Claudia Flores and Nicholas Marritz), and there are no disabling conflicts among the members of the class. The named representatives and class counsel will adequately represent the interests of the class.

**II.      The Claims in Counts I And II Qualify For Class Certification Under Rule 23(b).**

In order to have a class certified, the Plaintiffs must not only satisfy Rule 23(a), but must also show that they meet the requirements of at least one of the subparts of Rule 23(b).

**A.      Counts I and II Qualify For Class Certification Under Rule 23(b)(2).**

Once the criteria of Rule 23(a) are met, certification becomes an entitlement under Rule 23(b)(2) if, in addition, the defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). That criterion is satisfied here. GLK's failure to employ H-2B workers for the entire certified period of employment in 2011 equally affected all members of the proposed Class. So did its failure to reimburse these workers, after they had received their visas for the costs of their return travel to their homes. And so did GLK's failure to provide these workerswith required written disclosures at the time of their recruitment.

17

This makes declaratory relief appropriate "settling the legality of [that] behavior with respect to the class as a whole." Advisory Committee Notes 1966, to Rule 23(b)(2).

Class-wide determinations of liability—whether under the AWPA or under Wisconsin contract law—could be followed by individualized determinations of damages sustained by each class member. This kind of "divided" or "hybrid" certification, where liability is determined "on a class-wide basis, with separate hearings [later] to determine—if liability is established—the damages of individual class members," *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013), has been recommended by the Seventh Circuit as being "often … the sensible way to proceed." *See id.* at 801.

**B. Counts I and II Qualify for Class Certification Under Rule 23(b)(3).**

The claims in Counts I and II also meet the certification standards of Rule 23(b)(3). Certification is proper under Rule 23(b)(3) when the criteria under Rule 23(a) have been met and, in addition, "questions of law or fact common to members of the class predominate over any questions affecting only individuals members" and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Both conditions are satisfied here.

**1. Predominance**

In the resolution of the claims in Counts I and II, common questions predominate over questions, if any, affecting only individual members of the class, and these questions should be resolved on a class-wide basis.

The main questions underlying the claims for GLK's breach of the AWPA arrangement (in Count I) and for breach of contract(in Count II), by not employing workers it stranded in Matamoros in 2011 for the certified period of employment, are: (1) Whether workers stranded by

18

GLK in Matamoros, after receiving and accepting offers of employment contingent only on being issued visas, and after having in fact been issued visas, had enforceable AWPA working arrangements or common-law contracts with GLK for employment for a term; and (2) whether the period of employment was defined by the certified period of employment specified in GLK's Application for Temporary Employment Certification.

The main question underlying the AWPA claim (in Count I) for GLK's failure to reimburse workers for their costs of return travel to their homes is whether GLK had a legal duty to reimburse them under 20 C.F.R. § 655.22(m). And the main question underlying the AWPA claim (in Count I) for GLK's failure to provide the workers with certain written disclosures at the time of recruitment is whether GLK had a legal duty to provide such disclosures under 29 U.S.C. § 1821(a) and (g).

### 2. Superiority

The benefits of class treatment of Counts I and II are substantial. Individual adjudication of each of hundreds of class members' claims would burden the Court. It would also burden the class members themselves. Class members have relatively small-stakes claims arising from disclosure violations, which amount to a sizeable dollar amount in the aggregate, but which on an individual basis, claim by claim, would each cost more to litigate than the size of their resulting wage claims. In addition, class members are laborers of limited economic means, almost uniformly living in Mexico, so that travel to the United States for trial proceedings would both require visas allowing their re-entry into the United States, which they do not have at the present time, and impose travel costs that would be a very great strain on them to bear. Class-wide adjudication is superior to any other method of resolution of these claims. *See generally Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 675 (7th Cir. 2013) ("The smaller the

stakes to each victim of unlawful conduct, the greater the economies of class action treatment"); *Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 744 (7th Cir. 2008) ("The class action is an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated. The two points are closely related. If every small claim had to be litigated separately, the vindication of small claims would be rare.").

### III.     Counts I and III Could Also Be Certified Under Rule 23(c)(4).

As the Seventh Circuit has explained in *Phillips v. Asset Acceptance, LLC*, __ F.3d ___ (7th Cir. Dec. 2, 2013); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491-92 (7th Cir. 2012); and *Butler v. Sears Roebuck and Co.*, 727 F.3d 796, 800 (7th Cir. 2013), the class-wide adjudication of discrete issues, as opposed to entire claims, is both authorized by Rule 23(c)(4) and often will be "the sensible way to proceed." *Butler*, 727 F.3d at 800. Counts I and II are appropriate for certification as entire claims. But one or more of the elements of each of those claims could also independently be certified for class-wide adjudication under Rule 23(c)(4) without certifying the entirety of the claims.

### <u>CONCLUSION</u>

For all the reasons stated above, plaintiffs request the designation of Jiovanni Mendez Lancon as class representative, the appointment of class counsel, and certification of the following class for purposes of adjudicating liability (but not damages) for purposes Counts I and II of their Second Amended Complaint on a class-wide basis:

> All those individuals who were recruited and hired by Defendants, who were issued H-2B temporary work visas in August and September 2011 to work for the Defendants, and who were then dismissed, after being issued a visa but before being provided the work promised them pursuant to Defendants' H-2B application and certification.

Dated: December 17, 2013

Respectfully submitted,

/s/ Joshua Karsh_____

Joshua Karsh,
One of the Attorneys for Plaintiffs

Matthew J. Piers
José J. Behar
Joshua Karsh
Claudia Flores
Jenna Miara
Attorneys for Plaintiffs
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000
Chicago, IL 60602
Telephone: (312) 580-0100
Fax: (312) 580-1994
E-mail: mpiers@hsplegal.com
       jbehar@hsplegal.com
       jkarsh@hsplegal.com
       cflores@hsplegal.com
       jmiara@hsplegal.com

Weeun Wang
Nicholas Marritz
Attorneys for Plaintiffs
Farmworker Justice
1126 16th Street, NW, Suite 270
Washington, D.C. 20036
(202) 293-5420 ext. 308
E-mail: wwang@farmworkerjustice.org
       nmarritz@farmworkerjustice.org

21