UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSE ENRIQUEZ RAMIREZ, et al.,

        Plaintiffs,

  v.                                                                                         Case No. 12-C-210

GLK Foods, LLC, and RYAN A. DOWNS,

        Defendants.

**DECISION AND ORDER GRANTING MOTION FOR CLASS CERTIFICATION**

      Plaintiffs and the proposed class members are migrant workers recruited from Mexico to work at a sauerkraut cannery plant operated by Defendant GLK Foods, LLC in Bear Creek, Wisconsin in 2011. The migrant workers were supposed to be employed as part of the federal government's H-2B temporary foreign worker visa program. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b). The H-2B program authorizes employers to recruit and employ foreign workers on a temporary basis if the employers certify that domestic workers are not available to fill the positions. Plaintiffs allege that GLK and its president, Ryan A. Downs (collectively "GLK"), violated their rights and the rights of others similarly situated under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. §§ 1801–71. (Second. Am. Compl. ¶¶ 35–45, ECF No. 40.) They further allege that GLK is liable for breaching its contracts with Plaintiffs and the class members, (*id.* at ¶¶ 46–52), or, in the alternative, is liable under the doctrine of promissory estoppel. (*Id.* at ¶¶ 53–59.)

      Before me now is Plaintiffs' motion for class certification on two of their claims. Plaintiffs seek certification of one class: all individuals who were recuited and hired by GLK, who received

H-2B temporary work visas in August and September 2011, but were dismissed before traveling to Bear Creek, Wisconsin under Counts I and II ("2011 Class"). For the reasons that follow, Plaintiffs motion for class certification will be granted.

## BACKGROUND

In 2011, GLK hired migrant workers from Mexico to work at its sauerkraut cannery in Bear Creek, Wisconsin. Plaintiffs and the proposed class members were all H-2B workers hired to work by GLK who never made it to Bear Creek that year. Instead, GLK informed these workers that it would not need their services while the workers were waiting for transportation from Matamoros, Mexico—a town near the border with the United States—to the cannery in Wisconsin. Plaintiffs' complaint alleges three counts that can be summarized as follows:

> Count I – Class action claim for violating the AWPA "working arrangements" between class members and GLK in 2011 by terminating the class members early and failing to pay for return transportation; additionally, GLK failed to provide written disclosures required by the AWPA (Sec. Am. Compl. ¶¶ 54–70, ECF No. 40);
>
> Count II – Class action claim for breach of contract in 2011 based on early termination (*Id.* at ¶¶ 84–90);
>
> Count III – Class action claim for promissory estoppel (*Id.* at ¶¶ 91–95).

The motion before the Court requests certification of the 2011 Class under Counts I and II. Count III, although pleaded as a class action, is not a part of this motion.

According to Plaintiffs, after accepting GLK's offer of employment, the workers traveled from their homes to Matamoros. While the workers were in Matamoros and after receiving their visas, GLK informed them that they would not be needed. The workers then returned to their homes at their own expense. Plaintiffs contend that GLK's actions violated the AWPA working

2

arrangements by (1) not employing the workers for the entire "certified period of employment" and (2) not paying the workers for the costs of their return transportation. According to Plaintiffs, GLK certified that the class members would work from from August 1st to November 15th in 2011. GLK terminated the employment of the class members before they even started working. Plaintiffs also allege that GLK was required to pay the cost of the workers' return transportation from Matamoros to their respective homes under the AWPA's regulations. Specifically, they contend that GLK violated 20 C.F.R. § 655.22(m) which reads, in relevant part, as follows: "if dismissed by the employer prior to the end of the period, the employer is liable for return transportation."

Additionally under Count I, Plaintiffs allege that GLK violated the AWPA by failing to provide required written disclosures. The AWPA requires an employer seeking to hire migrant workers to provide certain written disclosures to the workers. 29 U.S.C. § 1821(a)(1)–(8). The disclosures must be in a language common to the worker. 29 U.S.C. § 1821(g). GLK has stipulated that it did not provide any written disclosures to any of the proposed class members in the 2011 Class. (Stipulation, App. Ex. C, ¶¶ 2–3, ECF No. 44-5.)

GLK does not deny that the migrant workers were terminated before leaving Matamoros. Rather, GLK argues that it was under no requirement to employ the migrant workers for the entire period. Alternatively, GLK contends that an unanticipated wage increases under the H-2B program in 2011, as well as a smaller than expected cabbage crop, justified the termination of the workers before they left Mexico. Under either argument, GLK asserts the class certification motion should be denied because the 2011 Class has no valid claim based on the period of employment theory of liability. GLK does not provide any argument against certificaiton of the 2011 Class under Count I

3

based on the alleged failure to pay the return transportation expenses or the stipulated lack of written disclosures.

Count II alleges that the early termination and failure to pay for return transportation also constituted breaches of the proposed class members' contracts. Plaintiffs allege that the H-2B application filed by GLK with the Department of Labor constituted the embodiment of contracts between each proposed class member and GLK. GLK opposes certification under this class because the contracts in question must be oral contracts, which would require individualized inquiries into the creation of that oral contract.

Plaintiffs' motion seeks to certify the 2011 Class under Counts I and II for liability purposes only. If Plaintiffs succeed on the merits of Counts I or II, then the damages of the individual class members would be determined in separate proceedings.

**LEGAL STANDARD**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ––––, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). A plaintiff requesting class certification must satisfy the four prerequisites of Rule 23(a), and then any one of the requirements under Rule 23(b). *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The four Rule 23(a) requirements are numerosity, commonality, typicality, and adequate representation of the class by the named plaintiffs and their counsel. Fed. R. Civ. P. 23(a). Assuming all four of the subsection (a) requirements are present, a class should be certified where,

among other conditions, there is a need for injunctive or declaratory relief or the common issue of law or fact predominate. Rule 23(b)(2) and (3).

Rule 23 is not "a mere pleading standard." *Dukes*, 131 S. Ct. at 2551. As a result, a court must conduct a "rigorous analysis" that may "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* But this rigorous analysis is not a license to turn the class certification proceedings into a dress rehearsal for the trial on the merits. *See*, *e.g.*, *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."); *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("Under the current rule, certification is largely independent of the merits . . ., and a certified class can go down in flames on the merits."); *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002) ("We note only that a determination of the propriety of class certification should not turn on likelihood of success on the merits."); *Bieneman v. City of Chicago*, 838 F.2d 962, 964 (7th Cir. 1988) ("[T]he propriety of class certification does not depend on the outcome of the suit."). The rigorous analysis also does not require that a court assume the truth of the matters as asserted by the plaintiff. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). If there are material factual disputes, the court must "receive evidence . . . and resolve the disputes before deciding whether to certify the class." *Id.* Accordingly, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 113 S. Ct. at 1195 (citing *Dukes*, 131 S. Ct. at 2552 n.6). It is the plaintiff's burden to prove that class certification is warranted. *Oshana*, 472 F.3d at 513. "It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 811

5

(7th Cir. 2012), *reh'g denied* (Feb. 28, 2012) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)).

**ANALYSIS**

**I. Count I**

Count I alleges three different violations of the AWPA: early termination, failure to pay for return transportation, and lack of disclosures. GLK only offers argument in opposition to certification of the 2011 Class on the early termination violation, while Plaintiffs maintain that all three of these violations for Count I should be adjudicated on a class-wide basis. GLK's acquiescence on the lack of disclosures may be attributable to the stipulated facts that establish GLK acted in a uniform way toward all of the proposed class members in 2011. For example, GLK stipulated that in 2011 it did not disclose the place of employment, the wage, the crops and kinds of activities, the period of employment, employee benefits to be provided, or the existence of a strike or other work stoppage, slowdown, or interruption. (Stipulation, App. Ex. C., ¶ 2, ECF No. 44-5.) All of these disclosures, among others, are required to be made in writing in a language common to the migrant worker by the AWPA. 29 U.S.C. §§ 1821(a)(1)–(8), (g). Although not part of any stipulation in the record, it also appears that GLK does not dispute that it did not pay the transportation costs of the proposed class members from Matamoros to their homes following their termination. As a result, it would appear that GLK has engaged in uniform behavior as to all of the class members that would foreclose any argument against certification under Count I based on the commonality and typicality Rule 23(a) prerequisites, that GLK did not "act or refuse to act on grounds that apply to the class" under Rule 23(b)(2), or that common questions do not

6

"predominate" under Rule 23(b)(3). Even if GLK is willing to litigate part of Count I on a class-wide basis, the Court must still conduct a "rigorous analysis" to determine whether class certification is appropriate. *See Dukes*, 131 S. Ct. at 2551.

Turning to Rule 23(a), the four prerequisites—numerosity, commonality, typicality, and adequate representation—are met as to the 2011 Class under Count I for all three alleged violations. The proposed class consists of at least 35 members, though the exact size is unknown. (Pl. Memo. in Supp. 6, ECF No. 45.) While there is no bright-line test for numerosity, classes of similar size have been certified in other cases. *See Pruitt v. City of Chicago*, 472 F.3d 925, 926–27 (7th Cir. 2006) ("Sometimes even 40 plaintiffs would be unmanageable."); *Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895, 897 (7th Cir. 1999) (noting that class consisted of class representative "and 35 other[s]"); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (even 40 members could be sufficiently large to satisfy numerosity). Moreover, there are factors other than the number of class members to consider under Rule 23(a)(1): "judicial economy arising from the avoidance of a multiplicity of actions, the ease of identification of members of the proposed class, the geographic dispersion of class members, the size of each plaintiff's claim, the financial resources of the class members, [and] the ability of claimants to institute individual suits." *Young v. Fortis Plastics, LLC*, 294 F.R.D. 128, 134 (N.D. Ind. 2013) (citing Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 3:6 (2002 & Supp. 2011)). These additional factors strongly suggest the prerequisite is met, as many of the class members are already identified, are located mostly in Mexico, have limited financial means, and present relatively small claims.

7

Rule 23(a)(2) requires "questions of law or fact common to the class." In order to show commonality, a plaintiff must show that the class members all "suffered the same injury." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012) (citing *Dukes*, 131 S. Ct. at 2551). "[S]uperficial common questions—like whether . . . each class member suffered a violation of the same provision of law—are not enough." *Id.* at 497 (internal quotation marks omitted). Rather, the class claims must turn on a common contention that can be resolved on a class-wide basis, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. As already discussed, GLK's stipulation that it did not provide any written disclosures as required by the AWPA to any of the proposed class members in 2011 essentially concedes that at least part of Count I can be decided in "one stroke." Moreover, as more fully laid out in Plaintiffs' brief, each of the elements of the claim related to the AWPA disclosures raise common questions that will have answers common to the class. (Pl. Memo in Supp. 11–13, ECF No. 45.)

GLK does contends that certification should be denied because Count I is based on a flawed understanding of the AWPA. GLK spends considerable time arguing that class certification is not appropriate because there is no law or regulation that required GLK to employ the class members for a certain period of time. (Def. Resp. 8–10, ECF No. 46.) According to GLK, because Plaintiffs' legal theory is flawed, the class-wide adjudication of the AWPA claim is "inappropriate." GLK does not attempt to tie this argument to any of the 23(a) prerequisites or the categories in 23(b), though it most logically relates to the commonality prerequisite. GLK also argues that certification under Count I should be denied because the AWPA does not require the payment of "pre-

8

employment expenses." (*Id.* at 6–8.) This argument is misplaced, however, as Count I in this case does not contain an allegation that GLK failed to pay for pre-employment expenses.

In any event, GLK's argument is based on an assumption that because the "rigorous analysis" required by Rule 23 may overlap with the merits of the underlying claims, this Court should deny certification of Count I because the proposed class members have no chance of prevailing on the merits. This argument is premature at this stage. *See Schleicher*, 618 F.3d at 685 (rejecting approach that "class certification is proper only when the class is sure to prevail on the merits"). Even if GLK is correct that the AWPA does not require it to employ the migrant workers for a specific period of time, it does not follow that class-wide adjudication is inappropriate. In fact, GLK's argument suggests that the commonality prerequisite is met as there is a "common answer"—Plaintiffs have no claim as a matter of law under the AWPA—for all of the class members. But agreeing with GLK's argument and denying certification would require the Court to go much further into the merits of the claims than is necessary to determine whether certification is appropriate. *Amgen*, 113 S. Ct. at 1195 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.") (citing *Dukes*, 131 S. Ct. at 2552 n.6).

The commonality inquiry asks whether the merits of the claim can be decided in "one stroke." *Dukes*, 131 S. Ct. at 2551. Here, it is clearly met. The core questions under Count I are whether the AWPA required GLK to employ the class members for a specific period of time, to pay for their return transportation, and to provide them written disclosures. Regardless of what the answers to these questions will be at summary judgment or trial, they will be common to the entire class—this is enough to satisfy commonality. In addition to these core questions of law, there are

9

a number of other common questions and answers for liability purposes under the AWPA as fully developed in Plaintiffs' brief that are unaddressed by GLK. (Pl. Memo. in Supp. 7–13, ECF No. 45.) For these reasons, GLK's argument is rejected and Rule 23(a)(2) is satisfied.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Although "factual distinctions" between the named plaintiffs and the class members do not preclude certification, the named class representatives' claims must have "the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)); *Oshana*, 472 F.3d at 514. Typicality should primarily be determined with reference to the defendants' actions as opposed to the defenses they might have with respect to certain class members. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011). As with the commonality analysis, GLK's stipulation regarding its actions towards all of the proposed class members demonstrates that there are no factual distinctions that suggest the named plaintiff's claims are not typical of the class. If GLK's defense regarding the AWPA requirements discussed above is correct, its success on the merits would not mean that the class representatives' claims do not have "the same essential characteristics as the claims of the class at large." *Muro*, 580 F.3d at 492. Nor is there any indication that GLK's actions differed between the named plaintiff and the proposed class members. *See CE Design Ltd.*, 637 F.3d at 724. Accordingly, the typicality prerequisite is met.

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The requirement is directed at "concerns about the competency of class counsel and conflicts of interest" between the class and its representatives. *Dukes*, 131

10

S. Ct. at 2551 n.5. "[N]amed plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives." *Randall v. Rolls–Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011). Here, there is no concern that Plaintiffs' counsel are not competent to litigate this case, as demonstrated in the declarations submitted by counsel. (Decl. of Joshua Karsh, Weeun Wang, Claudia Flores, and Nicholas Marritz ¶¶ 1–6, ECF No. 44-7.) Plaintiffs also contend, and GLK does not dispute, that there are no conflicts among class members, which is the logical outgrowth of concluding that the named plaintiff's claims are typical of the class. The Court is likewise unaware of any conflicts or defenses that would suggest that Jiovanni Mendez Lancon is not an adequate class representative.

Having established that the four 23(a) requirements are met by a preponderance of the evidence, the second half of the inquiry is whether the claims in Count I are suitable under one of the subsections to Rule 23(b). Plaintiffs first argue that certification under Rule 23(b)(2) is appropriate. They argue that GLK has "acted or refused to act on grounds that apply to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." However, this is not a case for injunctive or declaratory relief because Plaintiffs seek primarily damages for past violations. There is nothing in the complaint to suggest that any of the proposed class members have any ongoing involvement with GLK such that injunctive or declaratory relief would be appropriate. Plaintiffs do not even include a request for declaratory relief in their Second Amended Complaint, and they allege no facts that support a need for such relief. Plaintiffs seek damages on Count I and, absent an ongoing dispute between the parties, there is no need for declaratory relief. As the parties' disputes over the legal requirements of the AWPA

11

necessarily will be resolved in the adjudication of the AWPA claim, declaratory relief is neither necessary nor appropriate. Thus, Rule 23(b)(2) does not apply.

Certification under Rule 23(b)(3) is appropriate, however. This subsection is satisfied upon a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The factors to be considered in determining whether this condition is met include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.* This condition is satisfied as to Count I. The main questions are whether the disclosures required under the AWPA required employemnt for a certain period of time, whether the AWPA required the payment of return transportation, and whether GLK made the AWPA-required disclosures to the proposed class members. The questions of law and fact common to the class members clearly predominate over any questions relating only to the individual members for the reasons discussed in the commonality analysis above. It appears that each member of the proposed classes were provided (or not provided) the same materials. GLK's answers to the interrogatories suggest that there are no factual disputes, which would leave common questions of law as the only issues to resolve. Moreover, given relatively small statutory damage awards available for the

12

violations alleged, absent class certification it seems doubtful the claims could be brought individually. Plaintiffs' motion for certification of the 2011 Class pursuant to Rule 23(b)(3) as to Count I will therefore be granted.

**II.     Counts II**

Moving to certification under Count II, it is also based on the early termination and failure to pay for return transportation. Count II alleges that the early termination and the failure to pay for return transportation breached the terms of the contracts between each proposed class member and GLK. GLK's opposes Plaintiffs' motion for class certification as to Count II, arguing that certification is not appropriate under 23(b)(2) or 23(b)(3). Before addressing GLK's arguments, however, the Court will examine the 23(a) requirements.

The analysis of numerosity, commonality, typicality, and adequacy related to Count I above applies equally well to certification of the 2011 Class under Counts II. First, there is no question that joinder of all of the nearly 35 proposed class members with small claims living in Mexico is impracticable. Second, there are common questions because the same early termination and failure to pay for return transportation by GLK form the basis of Count II. Third, the claims of the representative parties are typical of the class as there is no indication that GLK acted differently toward the representative parties than the absent class members. Fourth, the representative plaintiff and class counsel are adequate for all of the reasons explained above.

Having found the Rule 23(a) requirements satisfied, the Court must examine whether the proposed class satisfies one of the subsections of Rule 23(b). Plaintiffs contend that the 2011 Class may be certified under Rule 23(b)(2) or Rule 23(b)(3). For the same reasons that Rule 23(b)(2) did not apply in Count I above, the Court finds that is not met here. Plaintiffs' damage claims

13

predominate and they have not alleged facts sufficient to show a need for declaratory relief. But also like Count I, Plaintiffs' claims in Count II can be certified under Rule 23(b)(3).

GLK argues that the 2011 Class cannot be certified because the alleged contracts are oral contracts between GLK and the individual class members. By definition, whether an oral contract exists is dependent on the statements made to each individual employee and what he or she reasonably understood them to mean. Because such a claim is dependent on the promises allegedly made to each employee, GLK argues that the individual issues of fact upon which liability must be determined would necessarily predominate. That is, the claim of each employee will have to be determined based on the specific promises that the employee claims were made to him and what he reasonably understood them to mean. Under these circumstances, GLK contends, no class can be certified.

In reply, Plaintiffs contend that Count II is not based on oral contracts between GLK and the workers; it is based on the written H-2B employment contract "embodied" in the Applications for Temporary Employment Certification (ETA Form 9142). (Pl. Reply 5–7, ECF No. 48.) These documents, Plaintiffs argue, by themselves constitute enforceable contracts under Wisconsin law. Count II rests on two propositions: "(a) as a matter of law, Plaintiffs had, and were required to have, a written contract of employment; and (b) as a matter of law, that contract was, and had to be, a contract for a term, not at-will." (*Id.* at 6.) Thus, liability for Count II will require a class-wide legal determination regarding whether these H-2B employment contracts existed and under what terms.

To certify a class under Rule 23(b)(3), the court must find "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

14

controversy." Among the issues to consider under Rule 23(b)(3) are the interests of the class members in controlling the prosecution individually, the existence of any litigation already begun by the class members, the desirability of concentrating litigation in a particular forum, and the difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). Under the predominance inquiry, a court must examine whether "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Rule 23(b)(3) requires that "common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen*, 133 S. Ct. at 1196 (emphasis in original) (quoting Fed. Rule Civ. P. 23(b)(3)). The common questions for Count II are whether the H-2B applications created employment contracts, whether those contracts contained terms guaranteeing employment for a specified period of time and payment for return transportation, and whether GLK breached these terms.

GLK argues that the last—difficulties in managing a class action—supports the denial of certification. GLK is correct that adjudication of oral contracts on a class-wide basis would be highly individualized, requiring an inquiry into the "meeting of the minds" between GLK and each proposed class member. But Plaintiffs have restricted their contract claims to breaches of the terms of written contracts in the form of the H-2B applications, not on oral contracts or promises made to each proposed class member. GLK's oral contract argument presumes that the Court will conclude as part of this motion that the H-2B applications (ETA Form 9142) cannot create employment contracts as a matter of law. (Def. Br. in Resp. 12, ECF No. 46 ("But as demonstrated above, the H-2B petition itself does not . . . create a contract. . . . Alternatively then, Plaintiffs contend that oral arguments made by agents of GLK create a separate contract of employment.").)

15

But for the reasons explained above, these motions for class certification are not a dress rehearsal for dispositive motions. If GLK's contract argument is correct and H-2B applications are not contracts, then they will prevail on the merits on Count II at summary judgment. Because Count II is not based on individual oral contracts, GLK's class certification argument is unpersuasive.

Nothing in this motion will prevent GLK from filing a motion to decertify the classes under Count II if the analysis changes as this case moves forward. The Court intends to hold Plaintiffs to their express renunciation of any contractual liability based on oral contracts and promises made to the named plaintiffs or proposed class members. If it becomes apparent in later motion practice or at trial that Plaintiffs' contract claim does depend on oral statements that require individualized inquiries inconsistent with Rule 23(b)(3), the 2011 Class under Count II will be decertified.

GLK suggests no other individualized issues that would overwhelm the common questions: (1) did the H-2B documents create contracts; (2) if so, do these contracts contain terms that guaranteed a specific period of employment or promised to pay for return transportation; and (3) did GLK breach these terms? An examination of the other factors identified in Rule 23(b)(3) also supports certification. Adjudicating liability once as to all of the proposed class members is vastly superior to litigating hundreds of individual actions for breach of contract. *See Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 744 (7th Cir. 2008). The class members' interests in controlling the litigation individually is minimal given the size of the claims, especially when the damages will be determined individually later. *See Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 675 (7th Cir. 2013). The Court is unaware of any similar litigation begun by class members. Finally, the concentration of the litigation in this forum is desirable because the domestic events that give rise to this lawsuit occurred in the Eastern District of Wisconsin.

The only remaining stumbling block for certification under Count II is the issue of damages if contractual liability established. Class certification should not be denied solely because there may be individualized inquiries on damages. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) *cert. denied*, 134 S. Ct. 1277 (2014) ("It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages."). In this case, the liability-only 2011 Class for Count II is the "sensible way to proceed." GLK cannot avoid certification of a class action or shield itself from liability by acting so that individual class members do not suffer identical damages, though they are subjected to the identical behavior. *Id.* ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits."). As a result, the 2011 Class will be certified under Count II pursuant to Rule 23(b)(3) for liability purposes only.

## CONCLUSION

Accordingly and for the reasons set forth above, Plaintiffs' motion for certification of the 2011 Class pursuant to Rule 23(b)(3) is **GRANTED**. For purposes of liability only under Counts I and II, the class will be defined as follows:

All those individuals who were recruited and hired by Defendants, received H-2B temporary work visas in August and September 2011 to worker for the Defendants, and who were then dismissed after being issued a visa but before traveling to Bear Creek, Wisconsin.

**SO ORDERED** this   10th   day of June, 2014.

                                    s/ William C. Griesbach
                                    William C. Griesbach, Chief Judge
                                    United States District Court